UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br>v.<br>ROBERT GENE RAND, *et al*,<br><br>         Defendants. | Case No. 3:16-cr-00029-MMD-WGC<br><br>ORDER |

## I.  SUMMARY

Intervener Reno Newspapers, Inc., dba Reno Gazette-Journal ("RGJ") raises two issues in this criminal matter.  First, RGJ seeks to set aside the June 8, 2016 protective order (ECF No. 166 ("Protective Order")) to which the parties stipulated and which the Court adopted. (ECF No. 219.) Second, RGJ seeks to remove redactions to the affidavit in support of the arrest warrants for Defendants ("the Affidavit").[1] (ECF No. 220.) The government opposes setting aside the Protective Order, and filed a brief describing relevant law regarding the redactions, but does not oppose removal of the redactions. (ECF Nos. 246, 247.) Defendant Richard West II opposes removing the redactions (ECF No. 248), and urges the Court to deny RGJ's motion to set aside the Protective Order (ECF No. 249).  For the reasons discussed below, RGJ's motions are denied.

---

[1] The redactions are based on Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), which governs the methods for obtaining Federal wiretaps and the procedures for handling the intercepted communications. *See* 18 U.S.C. §§ 2510-22. Title III is sometimes also referred to as the Wiretap Act.

## II. BACKGROUND

On April 27, 2016, the government filed a criminal complaint accompanied by the Affidavit under seal against a doctor and several defendants accused of distributing controlled substances. (ECF No. 2.) On May 11, 2016, the grand jury returned an indictment, which superseded the complaint. (ECF No. 55.) The complaint was eventually unsealed and a redacted version of the Affidavit was filed. (ECF No. 176.) After conferring at the Court's direction, the parties stipulated to the Protective Order, which was entered on June 8, 2016. (ECF No. 166.)

## III. DISCUSSION

### A. The Protective Order

RGJ argues that the Protective Order is overboard because it prevents the parties from discussing "any and all information or documents related to the case" with the media. (ECF No. 219 at 4.) The Court agrees that the Protective Order as written could be broadly interpreted to forbid activity that would raise First Amendment problems. However, the Court does not agree that RGJ's reading of the Order is the most reasonable reading.

The first paragraph describes the entirety of discovery as "protected information." (ECF No. 166 ¶ 1.) This term is confusing and must be clarified. If everything obtained in discovery was protected information there would be no need to further define the type of the information that the parties are forbidden from disclosing in paragraphs 2, 3, and 4. Therefore, the Court clarifies that the Protective Order does not prevent the parties from discussing with third parties *any* information obtained in discovery, but rather only information of the type listed in paragraphs 2, 3, and 4 (third party information including communications intercepted via wiretap, medical records, patent files, financial account numbers, social security numbers, phone numbers, addresses, etc.).

This clarification renders moot RGJ's primary argument for setting aside the Protective Order — that "the Protective Order is an overly restrictive gag order." Therefore, RGJ's Motion to Set Aside the Protective Order is denied. To the extent this

///

2

order does not fully address RGJ's concerns, RGJ may refile its motion based on the above clarification.

### B.     Redactions

The Affidavit includes a number of communications intercepted through a Title III wiretap. RGJ argues that the Affidavit is a public document, and as such any redactions are subject to a balancing test under the First Amendment. (ECF No. 220.) The government does not oppose RGJ's motion, but filed a brief discussing the law governing Title III wiretaps. (ECF No. 246.) Defendant West opposes removing the redactions based on the privacy protections afforded to information obtained through Title III wiretaps. (ECF No. 248.)

Resolution of this question turns on the intersection of two areas of law — the public's qualified First Amendment right to observe criminal trials and inspect and copy certain documents and the statutory privacy rights of the target of a Title III wiretap.

#### 1.     First Amendment and Criminal Proceedings

"The right to an open public trial is a shared right of the accused and the public, the common concern being the assurance of fairness." *Press-Enter. Co. v. Superior Court of California for Riverside Cty.*, 478 U.S. 1, 7 (1986) (*"Press-Enterprise II"*). In *Press-Enterprise II* the Supreme Court emphasized two questions a court should consider when deciding whether the public has a right to access criminal proceedings or records. First, the Court must determine whether a qualified First Amendment right attaches to the particular proceeding or document at issue. *Id.* at 8. If it does, the Court then goes through the same analysis it would in other First Amendment contexts — namely, whether the restriction at issue is narrowly tailored to serve a compelling governmental interest. *Id.*

The *Press-Enterprises II* court further clarified that when determining whether the First Amendment attaches, a court must consider: (1) whether the particular proceeding or document at issue is traditionally open to the press and general public; and (2) whether public access plays a significant positive role in the process at issue. *Id.* at 8.

3

RGJ correctly argues that pretrial proceedings generally, and affidavits supporting arrest warrants particularly, are traditionally open to the public and benefit from public scrutiny. *See Press-Enterprise II*, 478 U.S. at 8; *see also United States v. Loughner*, 769 F.Supp.2d 1188, 1191 (D. Ariz. 2011). Under RGJ's reasoning, the Court must therefore evaluate whether the redactions in the Affidavit are narrowly tailored and serve a compelling government interest. The Court, however, does not agree that this is the proper framing of the question at issue. The Affidavit is already public, and RGJ is seeking to remove redactions within it. As such, the Court agrees with West's framing. (*See* ECF No. 248 at 4.) The question the Court must consider is whether *information from Title III wiretaps* are traditionally open to the public and aided by public scrutiny. The answer in this instance is no.

### 2. Title III Privacy Protections

Title III codifies procedures for obtaining and disclosing information from federal wiretaps. 18 U.S.C. §§ 2516-18. As a check against the enormous power, and potential for abuse, inherent in the ability to covertly listen in on conversations, Title III imposes strict rules for the disclosure of intercepted communications.[2] Pursuant to 18 U.S.C. § 2517(3), intercepted conversations may be disclosed "while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof." In addition, any disclosed materials must have been obtained "in accordance with the provisions of [Title III]." 18 U.S.C. § 2517(3).

A number of courts have interpreted these requirements as prohibiting the public disclosure of Title III material until after it has been admitted into evidence in a criminal trial or at a suppression hearing. In *United States v. Dorfman*, which has been cited

///

///

///

---

[2] As Justice Clark wrote when evaluating New York's wiretap scheme, "[f]ew threats to liberty exist which are greater than that posed by the use of eavesdropping devices." *Berger v. New York*, 388 U.S. 41, 63 (1967).

approvingly by a number of circuits, Judge Posner discussed the tension between public criminal trials and the privacy protections of Title III:

> The draftsmen must have known that most criminal proceedings are conducted in public, so probably they expected (if they thought about the matter) that most testimony authorized by section 2517(3) would end up in the public domain. But we find no evidence that they wanted to create a right of public access. The privilege to disclose created by section 2517(3) continues in force "while giving testimony." There is no separate privilege to publicize testimony that was given in camera. And the right of the news media to get access to testimony is derivative from the public's right, if any.

690 F.2d 1230, 1233 (7th Cir. 1982).

Relying on *Dorfman*, at least one court in this circuit has held that there is no tradition of access to Title III materials early in a criminal proceeding, before the materials have been admitted into evidence or challenged by defendants. *See United States v. Inzunza*, 303 F. Supp. 2d 1041, 1045-46 (S.D. Cal. 2004). This Court agrees with the reasoning in *Inzunza* and *Dorfman*. Additionally, the Court notes that allowing the public to access intercepted communications before the target of a Title III wiretap has an opportunity to challenge the wiretap's legality creates a loophole in Title III's important privacy protections. *See In re Globe Newspaper Co.*, 729 F.2d 47, 54 (1st Cir. 1984) ("[I]f an electronic surveillance has been shown to be unlawful, Title III prevents its fruits from being disclosed to the public."). Accepting RGJ's argument would allow the government to essentially make any intercepted communications public by embedding it in a probable cause affidavit.

RGJ cites a number of cases in which courts have allowed the press to access Title III material at later stages in proceedings. *See, e.g.*, *In re Application of Newsday, Inc.*, 895 F.2d 74, 76 (2d Cir. 1990) (after the defendants entered guilty pleas); *In re Matter of N.Y. Times Co.*, 828 F.2d 110, 112 (2d Cir. 1987) (after denial of suppression motion in open court). While these cases do not support RGJ's current request, they are consistent with the holdings of *Dorman* and *Inzunza* — which is to say they all provide that RGJ may have a right to the redacted information at some later point during these proceedings. Therefore, RGJ's current motion is denied without prejudice.

5

**IV.    CONCLUSION**

It is therefore ordered that RGJ's Motion to Set Aside the Protective Order (ECF No. 219) is denied as moot.

It is further ordered that RGJ's Motion for Removal of Redactions (ECF No. 220) is denied.

DATED THIS 24th day of October 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE