UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| UNITED STATES OF AMERICA, | Case No. 3:16-cr-00029-MMD-WGC |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| ROBERT GENE RAND, *et al*, | |
| Defendants. | |

This Order addresses a number of motions pending before the Court that have been fully briefed. These motions were filed by Defendant Richard West II and joined by the other defendants. For the most part, there seems to be little concrete disagreement as to the government's obligations or compliance with such obligations in producing discovery materials. Instead, the parties seem to argue over hypothetical disagreements.

**1.   Motion for Notice of Intent to Introduce Rule 404(B) Evidence: ECF No. 252**

West asks the Court to direct the government to provide thirty (30) days notice of any evidence under Fed. R. Evid. 404(b). (ECF No. 252.) West argues that thirty (30) days amounts to reasonable notice under Rule 404(b) under the circumstances of this case to give defendants sufficient time to file motions in limine and the Court time to rule on any such motions. The government argues that the Court should not impose any time limit for notification, and any time limit should be no more than fourteen (14) days. (ECF No. 266.) While this case may be complex because of the number of defendants and the length of the alleged conspiracy, the Court finds that twenty (20) days notice is more than reasonable time for defendants to file any motions in limine and for those motions to

be decided before trial.[1] The government must therefore provide notice of any Rule 404(b) evidence at least twenty (20) days before trial, unless good cause exists to support a shorter notice.

West's motion (ECF No. 252) is granted in part. The other defendants' joinders (ECF Nos. 257, 258, 260, 264, 272, 274) are similarly granted in part.

**2.      Motion for Release of Materials: ECF No. 253**

Wests asks the Court to require the government to inspect the personnel files of all federal law enforcement agents and federal task force officers the government intends to call as witnesses at trial and produce information material to their credibility. (ECF No. 253.) The government responds that it understands its obligations under *United States v. Henthorn,* 931 F.2d 29 (9th Cir. 1991), and has started the review process required under *Henthorn.* (ECF No. 268.) West counters that he does not disagree with the procedures proposed by the government but reiterated the request in his motion. The parties' briefs do not show any disagreement. To the extent there is any dispute, the Court clarifies that the government is required to inspect the personnel files of any federal officers who the government intends to call as witnesses and disclose any impeachment material to defendants in this case. If it is unclear whether the information must be disclosed, the government will provide the information for the Court's *in camera* review. West's motion (ECF No. 253) and the other defendants' joinders (ECF Nos. 261, 276) are denied as moot.

**3.      Motion for Pre-Trial *Brady* Information: ECF No. 254**

West identifies an extensive list of items relating to a former FBI and DEA confidential source ("CS-1") that he contends the Court should compel the government to produce pretrial "to the extent that any such item is applicable to this prosecution." (ECF No. 254; ECF No. 290 at 5.) It is not clear if any of the enumerated items have been

---

[1]Defendants' Proposed Complex Case Schedule, which the Court adopted, provides for the government to disclose any summaries, charts or calculations offered as its case-in-chief at least twenty (20) days before trial. (ECF No. 215 at 5.) Rule 404(b) evidence seems somewhat more analogous to these disclosures.

produced. The government represents that it has disclosed all *Brady* materials relating to CS-1 and intends to comply with its obligations to produce *Giglio* materials relating to CS-1 before trial. (ECF No. 284 at 2, 5.) West does not dispute these representations. (ECF No. 284 at 5.) Thus, as best the Court can discern, the gist of the parties' dispute is whether the items requested, as drafted, cover information that is not within the government's possession, custody or control.

The parties do not dispute the laws governing the government's disclosure obligation. Under the Supreme Court's decision in *Brady v. Maryland*, a prosecutor must disclose evidence that is "material either to guilt or to punishment." *Brady*, 373 U.S. 83, 87 (1963). In *Giglio v. United States*, the Supreme Court extended *Brady*'s disclosure requirement to evidence that may impeach a government witness. *Giglio,* 405 U.S. 150 (1972). Materiality — whether the evidence "would have created a reasonable probability of a different result" — is the standard for disclosure. *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)) (internal quotation marks omitted). Potential impeachment evidence is material because, "if disclosed and used effectively, it may make the difference between conviction and acquittal." *Carriger v. Stewart*, 132 F.3d 463, 481 (9th Cir. 1997) (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)) (citations omitted) (internal quotation marks omitted). This legal system tests witness veracity through cross-examination, which is why impeachment evidence must be timely revealed. *Id.* (quoting *United States v. Bernal-Obeso*, 989 F.2d 331, 335 (9th Cir. 1993)).

The government argues that its disclosure obligation under *Giglio* is analogous to its disclosure obligation under Fed. R. Crim. P. 16(a)(1)(E), which the Ninth Circuit in *United States v. Gatto,* 763 F.2d 1040, 1048 (9th Cir. 1985), found extends to "documents within the federal government's actual possession, custody or control."[2] (ECF No. 284 at 2, citing *Gatto,* 763 F.2d at 1048). The government does not dispute that its disclosure obligation extends to the investigative team in this case, but it challenges West's

---

[2] *Gatto* involves Rule 16(a)(1)(C), which is the former version of Rule 16(a)(1)(E).

3

contention that its obligation covers state and local agencies and private parties. (*Id.* at 3.) West does not suggest that the reasoning under Rule 16(a)(1)(E) does not apply, but argues that the legal meaning of "control" covers "the ability to obtain documents without a subpoena."[3] (ECF No. 290 at 4.) West thus argues that "[d]pending upon the specific terms of CS-1's 'agreement' with the FBI and DEA or both . . . the prosecution conceivably has 'control' over many items in the hands of private persons, organizations or other entities in connection with this and other investigation." (*Id.*)

The Court agrees with the government that its *Brady* and *Giglio* disclosure obligation extends to information in its actual possession, custody or control. *See Gatto,* 763 F.2d at 1048. In addition, "the prosecution has a duty to learn of any exculpatory evidence known to others acting on the government's behalf." *Carriger,* 132 F.3d at 479-480. As the court in *Carriger* reasoned, "[b]ecause the prosecution is in a unique position to obtain information known to other agents of the government, it may not be excused from disclosing what it does not know but could have learned." *Id.* "The obligation under *Brady* and *Giglio* is the obligation of the government, not merely the obligation of the prosecutor." *United States v. Blanco,* 392 F.3d 382, 393 (9th Cir. 2004). However, the government does not have a duty to obtain and turn over materials under the control of state officials, let alone private parties. *See United States v. Aichele,* 941 F.2d 761, 764 (9th Cir. 1991) (finding that the prosecution did not violate *Brady* for failing to turn over impeachment material relating to a government witness that was contained in the California Department of Corrections file because the file was under the control of state officials).

///

---

[3] West argues that the government acknowledges its obligation to disclose materials in its "control," but ignores the government's argument that the obligation extends only to materials in its "actual" control. (ECF No. 290 at 3; ECF No. 284 at 2.) In *Gatto,* the Ninth Circuit found that the disclosure obligations under Rule 16(a)(1)(C), unlike the obligations under Rule 16(a)(1)(A), require "actual possession, custody or control" and not "constructive possession." *Gatto,* 763 F.2d at 1048. Moreover, where "a defendant has enough information to be able to ascertain the supposed *Brady* materials on his own, there is no suppression by the government." *Aichele,* 941 F.2d at 764.

West erroneously relies on *Milke v. Ryan,* 711 F.3d 998 (9th Cir. 2013), and *Tennison v. City and County of San Francisco,* 570 F.3d 1078 (9th Cir. 2008), to suggest that the government's disclosure obligation extends to state investigative agencies. *Milke* involves a petition for habeas corpus filed under 28 U.S.C. § 2254 where impeachment material contained in the personnel file of the homicide detective who interrogated the petitioner was withheld by the local prosecutor. The Ninth Circuit reiterated that "[t]he prosecutor is charged with knowledge of any *Brady* material of which the prosecutor's office or the investigating police agency is aware." *Milke,* 711 F.3d at 1012. *Tennison* similarly addresses a local prosecutor's duty to disclose *Brady* information held not just by the prosecutor, but by police officers who were involved in investigating the case. *Tennison,* 570 F.3d at 1087. These two cases do not support the argument that West advances here — the federal government/prosecution is not charged with knowledge of *Brady* materials in the state's control where the state officers have no involvement in the investigation in this case.

Thus, West's motion is denied to the extent any of the requests delineated in the motion seek disclosure of information relating to CS-1 that is not within the government's possession, custody or control. To the extent West's motion asks for *Brady* and *Giglio* material within the government's possession, custody or control that has not been produced, West's motion is granted.

In sum, West's motion (ECF No. 254) is granted in part and denied in part. The other defendants' joinders (ECF Nos. 255, 256, 262[4], 265, 271, 275) are similarly granted in part and denied in part.

///
///
///

---

[4]Defendant Robert Gene Rand's joinder covers not just information relating to CS-1 but to any witnesses or confidential sources. (ECF No 262.) Based on the government's representation, the Court assumes the government will comply with its *Brady* and *Giglio* disclosure obligations with respect to other government witnesses and confidential sources.

### 4. Motion for Disclosure of Identifying Information: ECF No. 259

West seeks disclosure of identifying information for two sources of information — SOI-1 and the "source of information SOI (USAO 040924-40925) who met with federal agents on May 31, 2016 ("SOI")." (ECF No. 259 at 1-2.)

It is well established that the government retains a qualified privilege to protect the identity of individuals who provide information to law enforcement officers. *United States v. Henderson,* 241 F.3d 638, 645 (9th Cir. 2001) (citing *Roviaro v. United States,* 353 U.S. 53 (1957)). "'A trial court may require disclosure, however, where the defendant shows that disclosure of an informant's identity, or of the contents of his communication, is 'relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause.'" *United States v. Amador-Galvan,* 9 F.3d 1414, 1417 (9th Cir. 1993) (quoting *Roviaro,* 353 U.S. at 60-61). The defendant carries the initial burden of showing "a need for disclosure of a confidential informant's identity." *Id.* Once defendant has satisfied his burden, the court is required to "apply a balancing test, weighing the public interest in encouraging citizens to inform the government about criminal activity, against an accused's right to prepare his defense." *Id.* "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro,* 353 U.S. at 62. The district court has discretion in deciding whether to hold an *in camera* hearing. *See Amador-Galvan,* 9 F.3d at 1417. However, "[b]alancing the defendant's and the government's interests, a district court must hold an in camera hearing whenever the defendant makes a minimal threshold showing that disclosure would be relevant to at least one defense." *Henderson,* 241 F.3d at 645 (quoting *United States v. Spires,* 3 F.3d 1234, 1238 (internal quotation marks omitted). Moreover, an *in camera* hearing "is advantageous because it poses little risk of disclosing the identity of the informant and may provide many of the same benefits as disclosure itself, especially when defense

///

6

counsel may participate under an order not to reveal any information disclosed during the hearing." *Id.* (quoting *Spires*, 3 F.3d at 1238) (internal quotation marks omitted).

With respect to the SOI, West acknowledges that she/he "does not appear to be a percipient witness with respect to the conspiracy count, [but] she/he could lead to first-hand source or circumstantial evidence which would be helpful to preparing the defense to the conspiracy count charged in count one." (*Id.* at 2; ECF No. 291 at n.1.) Such speculation is not sufficient to meet West's burden to demonstrate the need for the disclosure of the SOI's identity. *See Henderson,* 241 F.3d at 645 (In satisfying his burden to show a need for the disclosure of an informant's identity, a defendant "must show more than a 'mere suspicion' that the informant has information that will prove 'relevant' and helpful' to his defense, or that will be essential to a fair trial"). Nor is it enough to persuade the Court that an *in camera* hearing should be conducted. West's motion with respect to the SOI's identifying information is denied. The other defendants' joinders (ECF Nos. 263, 273) are similarly denied.

West's request for the disclosure of SOI-1 presents a closer call. SOI-1 provided "general information regarding patients of Dr. RAND, whom were visiting his practice . . . and were possibly involved with drug trafficking activity" and "information regarding cash paying patients whom would have after hour's appointments with Dr. RAND and other office staff members." (ECF No. 285-1 at 3.) West argues in his reply that he needs the identity of SOI-1 for a number of reasons, including the fact that SOI-1 did not identify West as a patient who "obtains illegal prescription from Dr. Robert Rand" and the need to refute the anticipated testimony as to the nefarious "backdoor" patients.[5] (ECF No. 291 at 3.) However, because these arguments were presented in West's reply, the Court has

---

[5]In his motion, West makes the general argument that because SOI-1 "provides percipient witness eyewitness information," SOI-1's identity is relevant to the defense of the conspiracy charge, and because "there is exculpatory impeachment information about this witness (see USAO 000035) that would cast doubt on her credibility which needs to be disclosed." (ECF No. 259 at 5.) Neither argument shows the need for the disclosure of SOI-1's identity. West fails to explain why the information observed is helpful to his defense. The Court fails to see why the existence of impeachment information as noted by the DEA agent compels disclosure of the informant's identity.

7

not had the benefit of the government's response. Rand joins in West's motion, but makes no independent argument as to why the identity of SOI-1, who had provided information about Rand's purported activities, is helpful to his defense. (ECF No. 263.) For these reasons, the Court finds that oral argument on West's request for the disclosure of the identifying information for SOI-1 will assist the Court to determine whether West has satisfied his initial burden of demonstrating the need for the disclosure. Oral argument on West's motion relating to SOI-1 will be scheduled.

**5.   Motion for Discovery: ECF No. 267**

West asks the Court to compel the government to disclose a copy of the Nevada Prescription Monitoring Program spreadsheet report ranging from August 2014 to August 2015 ("the Report"), arguing that the Report is material to preparing his defense and must be disclosed pursuant to Fed. R. Crim. P. 16(a)(1)(E)(i). (ECF No. 267.) The government counters that West has not demonstrated materiality. (ECF No. 286.)

Rule 16(a)(1)(E)(i) compels the government to permit a defendant to copy and inspect any document within the government's possession, custody or control if "the item is material to preparing the defense." Rule 16 imposes a burden on defendant to "make a prima facie showing of materiality." *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir. 1990). "Materiality is a 'low threshold; it is satisfied so long as the information ... would have helped' to prepare a defense." *United States v. Soto-Zuniga,* 837 F.3d 992, 1003 (9th Cir. 2016) (quoting *United States v. Hernandez-Meza,* 720 F.3d 760, 768 (9th Cir. 2013)). "The test is not whether the discovery is admissible at trial, but whether the discovery may assist [a defendant] in formulating a defense, including leading to admissible evidence." *Id.*

West argues that the Report is material to his defense in part because it contains information that provides insights into the timing and course of the investigation, gives West access to the same information which the federal investigators obtained as part of the government's investigation, and will help his counsel identify and interview other patients who were purportedly "back-door" patients of Defendant Rand to refute the

8

anticipated testimony as to the nefarious nature of these "backdoor" patients. (ECF No. 267 at 3; ECF No. 287 at 3, 5.) The alleged conspiracy spanned a period of over three years, from on or about November 13, 2012, to April 28, 2016, and involved possession with intent to distribute controlled substances which were not prescribed by Defendant Rand for a legitimate medical purpose. (ECF No. 55 at 2.) The Report covers Prescription Monitoring Program records from August 2014 to August 2015, which fall within the period of the alleged conspiracy.[6] The Court agrees with West that the Report may assist him in formulating a defense and is therefore material under Rule 16(a)(1)(E)(i).

West's motion (ECF No. 267) for inspection and copying of "the Nevada Prescription Monitoring Program spreadsheet report ranging from August 2014 to August 2015 which was provided on August 2015 to agents" of the DEA is granted.

DATED THIS 2nd day of December 2016.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[6] The government contends that producing the Report, which contains third-party patients' prescription records on prescriptions issued by Defendant Rand is "overly burdensome and obviously risks disclosure of sensitive records." (ECF No. 286 at 2.) It is not obvious to the Court why the production of a report already within the government's possession is "overly burdensome." As for any risk of disclosure, the Court expects West's counsel to comply with the Protective Order.