UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT GENE RAND, *et al*,<br><br>Defendants. | Case No. 3:16-cr-00029-MMD-WGC<br><br>ORDER |

Defendant Robert Gene Rand ("Rand") faces three counts involving distribution of scheduled II controlled substances which were prescribed not for a legitimate medical purpose and by an individual practitioner not acting in the usual course of professional practice. (ECF No. 55.) Before the Court is Rand's motion in limine ("Motion") to exclude two expert witnesses' proposed testimony relating to six of Rand's patients who are not named in the Indictment ("Patients"). (ECF No. 451.) The government has responded (ECF No. 499) and Rand has replied (ECF No. 509).

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). It is a preliminary motion that is entirely within the discretion of the Court. *See Luce v. United States*, 469 U.S. 38, 41–42 (1984). To exclude evidence on a motion in limine, "the evidence [must be] inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Luce,* 469 U.S. at 41 n.4). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

Rand argues that his practices with respect to the Patients have no relevance or connection to the alleged conspiracy charged in count one or the distribution offense charged in count fourteen. (ECF No. 451 at 3-4.) The government counters that expert testimony on the issue of whether Rand prescribed controlled substances without a legitimate medical purpose and not in the usual course of professional practice is relevant to an essential element of the offense and must be presented through expert testimony. (ECF No. 491 at 2-6.) However, there is no dispute that, in general, the issue of whether the controlled substances were prescribed not for a legitimate medical purpose and by an individual practitioner not acting in the usual course of professional practice is a proper subject of expert opinion under Fed. R. Evid. 702. Rand's argument is that the government is essentially trying to offer evidence of Rand's practices with other patients, outside of the alleged conspiracy, to show that he prescribed the controlled substances to co-defendants and the victim identified in count fourteen not for a legitimate medical purpose and by an individual practitioner not acting in the usual course of professional practice. The Court agrees with Rand.

Count one alleges that "defendants herein, knowingly and intentionally combined, conspired, confederated and agreed, together and with each other, and with other persons known and unknown, to distribute and possess with intent to distribute controlled substances . . . which were prescribed for a legitimate medical purpose and by an individual practitioner not acting in the usual course of professional practice." (ECF No. 55 at 2.) This count as charged supports the government's argument that Rand agreed with co-defendants and "with other persons known and unknown [] to distribute and possess with intent to distribute controlled substances." Thus, as charged, the conspiracy count sufficiently provides notice that Rand purportedly conspired with others who are not named in the Indictment to distribute controlled substances. However, it does not provide a bases to stretch the bounds of the conspiracy beyond reason. Specifically, it does not support the government's theory that the conspiracy should be understood to revolve around Rand such that every time he prescribed controlled substances without a

legitimate medical purpose or not in the usual course of professional conduct to *any patient during the period of the alleged conspiracy* he took an overt act taken in furtherance of the conspiracy.

"[T]he essence of a conspiracy is an agreement to commit an unlawful act." *United States v. Recio,* 537 U.S. 270, 274 (2003). "To establish the existence of a single conspiracy, rather than multiple conspiracies, the government must prove that an overall agreement existed among the conspirators." *United States v. Bibbero,* 749 F.2d 581, 587 (9th Cir. 1984). Courts in the Ninth Circuit have applied a "factors" test to differentiate a single conspiracy from multiple conspiracies. *Id.* The factors to consider cover "the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goal." *Id.*

Here, the limited evidence presented in connection with the change of plea hearings of co-defendants shows that the purported nature of the scheme was Rand prescribing controlled substances not for a legitimate medical purpose or not in the usual course of professional practice to co-defendants who either used the substances and/or distributed them to each other or to a few others. In other words, the scheme involved Rand's alleged distribution to a network of co-defendants. The government now proposes a much broader scheme. The nature of the scheme as described by the government in opposing Rand's Motion involves the co-defendants agreeing to enable Rand to distribute controlled substances to basically as many of Rand's patients as possible during the approximately four years of the alleged conspiracy (i.e., every one of Rand's patients who received controlled substances which were prescribed not for a legitimate medical purpose and by an individual practitioner not acting in the usual course of professional practice). Presumably, co-defendants' goals were to obtain oxycodone while Rand's goal, under the government's theory articulated in its opposition of Rand's Motion, was to prescribe oxycodone to as many patients as possible. Not only do the nature of the purported schemes appear distinct, they do not share commonality of goal. The alleged conspiracy among Rand, co-defendants and "other persons" was for Rand to prescribe

3

oxycodone to co-defendants for their use and distribution, not for Rand to over-prescribe oxycodone to his other patients who seemingly have no connection to co-defendants.[1] Thus, while the government may assert that Rand and Rand Family care employees purportedly agreed and conspired to prescribe controlled substances not for a legitimate medical purpose and by an individual practitioner not acting in the usual course of professional practice (ECF No. 499 at 1-6), the factors identified by the Ninth Circuit suggest that such a scheme would be a separate conspiracy from the conspiracy charged in count one.

In sum, the Court agrees with Rand that whether controlled substances purportedly "distributed" to other patients were prescribed not for a legitimate medical purpose and by an individual practitioner not acting in the usual course of professional practice is not probative of whether they were similarly unlawfully prescribed to co-defendants as charged in count one. Thus, the government's expert witnesses are precluded from discussing Rand's prescription practices and management with respect to the Patients. However, this ruling does not preclude the government's expert witnesses from offering their expert opinion as to the general standard of care and whether Rand's conduct fell below that standard to establish that controlled substances were not prescribed for a legitimate medical purpose and by an individual practitioner not acting in the usual course of professional practice. *See United States v. Feingold,* 454 F.3d 1001, 1007 (9th Cir. 2006) (affirming the district court's decision to permit expert witnesses to testify about the standard of care applicable to the distribution of opioid and other drugs because in the context of criminal prosecution of licensed practitioners, evidence of the applicable standard of care is probative of whether the practitioner prescribed the drugs without a legitimate medical purpose or failed to act in the usual course of professional practice).

///

---

[1] The government is correct that there is no requirement that co-conspirators have knowledge of one another, or even knowledge of every aspect of the conspiracy, but they must still be woven together by a commonality of purpose. The government has not articulated a plausible common scheme that satisfies these standards.

For the foregoing reasons, Rand's motion in limine (ECF No. 451) is granted.

DATED THIS 14th day of April 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE