UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| UNITED STATES OF AMERICA, | Case No. 3:16-cr-00029-MMD-WGC-1 |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| ROBERT GENE RAND, | |
| Defendant. | |

**I.    SUMMARY**

Defendant Robert Gene Rand, a former medical doctor who admitted to intentionally overprescribing opioids for years, is currently serving a 96-month sentence for involuntary manslaughter, 18 U.S.C. § 1112(a), and a concurrent 120-month sentence for distribution of a controlled substance, 21 U.S.C. § 841(a)(1), (b)(1)(C), following a guilty plea, at one of the minimum-security camps contained within Federal Correctional Complex Lompoc ("Lompoc"). (ECF Nos. 668, 749 at 1, 758 at 4, 8.) Before the Court is Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on the "extraordinary and compelling reasons" presented by the COVID-19 pandemic[1] as applied to his health and particular circumstances—including a COVID-19 outbreak at Lompoc ("Motion").[2] (ECF No. 758.) Even assuming Defendant is at increased risk of

---

[1]The Court issues this order during the COVID-19 pandemic, as a novel coronavirus is killing many people around the world, and many governments, including the governments of the United States and Nevada, have at least partially shut down their societies and economies in response.

[2]The government opposes his release. (ECF No. 765.) Defendant also filed a reply in support of his Motion. (ECF No. 769.)

The Court also addresses two other administrative matters. First, Defendant filed some redacted medical records in support of his Motion as a motion. (ECF No. 759.) The Court reviewed those records in considering the Motion. Though this supplemental proffer is not really a motion, for administrative purposes, the Court grants the 'motion' consisting

contracting a severe case of COVID-19 given the outbreak at Lompoc, the Court agrees with the government that the 18 U.S.C. § 3553(a) sentencing factors weigh definitively against releasing him. The Court will deny Defendant's Motion.

## II.    BACKGROUND

Defendant was a licensed medical doctor who ran a clinic in Reno, Nevada. (ECF No. 598 at 5.) Between January 2011 and April 2016, he prescribed opioids[3] to co-defendant Richard West who resold them as part of a drug ring West ran out of his family's car dealership. (*Id.*; *see also id.* at 7-8; *see also* ECF No 765 at 3-6.) He also specifically prescribed opioids to Michael Yenick from June 2014 to July 2015. (ECF No. 598 at 6.) Michael Yenick was hospitalized twice during the summer of 2015, and Defendant was aware of these hospitalizations. (*Id.*) On September 22, 2015, Mr. Yenick's mother called Defendant and begged him not to prescribe her son any more opioids, because if he did, he would "kill her son." (*Id.*) Nonetheless, Defendant continued to prescribe Michael Yenick significant amounts of opioids in the fall of 2015 "in reckless disregard for [Mr. Yenick's] life[,]" who died of an opioid overdose in October 2015. (*Id.* at 5-6.)

Defendant appealed the sentence the Court imposed on him following his guilty plea. (ECF No. 703.) The Ninth Circuit affirmed. (ECF No. 749.) In so doing, the Ninth Circuit noted, "[d]uring his safety valve proffer and in his sentencing memorandum, [Defendant] falsely denied or frivolously contested offense conduct by stating that he believed at the time that his prescribing practices were reasonable." (*Id.* at 3.) "Those statements also reflected an attempt to shift blame for his criminal conduct onto his

---

of the redacted medical records. (*Id.*) Moreover, the government filed an unredacted set of Defendant's medical records along with a motion to seal. (ECF Nos. 766, 766-1, 766-2.) The Court finds that the exhibits should remain under seal as they contain confidential information about Plaintiff, including Plaintiff's medical records and information about his medications. The Court will therefore grant the government's motion to seal. (ECF No. 766.)

[3]"In 2015, for instance, [Defendant] prescribed 1.24 million opioids, including over 500,000 more oxycodone pills than any other doctor in Northern Nevada." (ECF No. 765 at 5 (citation omitted).)

2

patients." (*Id.*) The Supreme Court denied his ensuing petition for certiorari. (ECF No. 754.)

Defendant seeks release because his preexisting medical conditions make him particularly vulnerable to COVID-19, and there is an outbreak of COVID-19 at Lompoc. (ECF No. 758 at 4-10.) Defendant is 57 years old. (ECF No. 765 at 1.) He has hypertension and type-two diabetes. (ECF No. 758 at 4-5.) He proffered the affidavit of Doctor Steven Edelman along with his Motion, who explained that "having Type 2 diabetes is a significant risk factor for serious complications from COVID-19, including death." (*Id.* at 5-6, 22-29.)

Defendant went on to explain in his Motion that there is a COVID-19 outbreak at Lompoc (though not necessarily in the particular camp where Defendant is housed). (*Id.* at 7-10.) Defendant also noted that other courts around the country, including at least one court in this district, have granted motions similar to the Motion. (*Id.*) Defendant also argues that the Bureau of Prisons ("BOP"), who administers Lompoc, does not have an adequate plan in place to control the COVID-19 outbreak at Lompoc. (*Id.*) He finally argues that he is not able to protect himself from COVID-19 infection at Lompoc because of crowded conditions, imperfect compliance with COVID-19 countermeasures by other inmates, and BOP's mismanagement. (*Id.*)

Defendant filed a request for compassionate release with the warden of Lompoc on April 7, 2020, who never responded. (*Id.* at 3.) More than 30 days elapsed between the time Defendant submitted his compassionate release request to the Warden and when he filed this Motion. (*Id.*)

Defendant was first sent to Lompoc on December 20, 2017, "and has been within the South Camp at FCC-Lompoc since August 2019." (ECF No. 765 at 13.) He has served about 48 months of his original 120 month sentence thus far. (*Id.*) His current projected release date is November 4, 2024. (ECF No. 769 at 11.)

///

///

3

## III. LEGAL STANDARD

Defendant specifically seeks release under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018. (ECF No. 758 at 1-2.) This provision offers Defendant a limited exception to the general rule that the Court may not modify or reduce the length of a sentence after the Court has imposed it. *See* 18 U.S.C. § 3582(c); *see also U.S. v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (explaining that generally a court cannot modify a sentence after it has imposed it). "It allows the sentencing judge to reduce a sentence based on 'extraordinary and compelling reasons' after the defendant has asked the BOP to bring such a motion on her behalf and exhausted all administrative rights to appeal the BOP's denial of that request." *United States v. Mogavero*, Case No. 2:15-cr-00074-JAD-NJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). Moreover, before granting such a request, the Court "must consider the factors in 18 U.S.C. § 3553(a) 'to the extent that they are applicable,' and any sentence reduction must be 'consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citations omitted).

## IV. DISCUSSION

The Court follows a three-step process to evaluate the Motion. The Court first addresses whether Defendant has satisfied the statutory prerequisites under Section 3582(c)(1)(A), then whether Defendant has shown "extraordinary and compelling reasons" for the Court to release him under Section 3582(c)(1)(A)(i), and then addresses the applicable sentencing factors and policy statements, as it must under Section 3582(c)(1)(A). To reiterate, the Court agrees with the government that the applicable sentencing factors and policy statements do not weigh in favor of releasing Defendant, and thus the Court will deny his Motion.

### A. Statutory Prerequisites

Section 3582(c)(1)(A) requires that a defendant ask the BOP to bring a motion for compassionate release on the defendant's behalf before filing such a motion with the Court, normally done—as here—by submitting a request to the warden. (ECF No. 758 at

4

3.) *See also* 18 U.S.C. § 3582(c)(1)(A). In addition, a defendant may only bring a motion under Section 3582(c)(1)(A) "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.*[4]

There is no dispute that Defendant has satisfied these prerequisites here by filing a request with the warden of Lompoc and then waiting 30 days before filing his Motion. (ECF Nos. 758 at 3, 765 at 15 ("[T]he Court maintains jurisdiction to hear argument from the parties.").)

### B.  "[E]xtraordinary and compelling reasons"

Having found Defendant satisfied the statutory prerequisites, the Court moves on to the merits of Defendant's compassionate release request. To start, the Court assumes without deciding that that the combination of the COVID-19 outbreak at Lompoc with Defendant's hypertension and diabetes constitute extraordinary and compelling reasons to grant his compassionate release request. Other courts within the Ninth Circuit and elsewhere have found as much. *See, e.g.*, *U.S. v. Barber*, Case No. 6:18-CR-00446-AA, 2020 WL 2404679, at *3-*5 (D. Or. May 12, 2020) (granting request of diabetic inmate at Lompoc and finding the combination of his underlying health conditions and the COVID-19 outbreak at Lompoc constituted extraordinary and compelling reasons); *U.S. v. Connell*, Case No. 18-CR-00281-RS-1, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020) (same); *U.S. v. Rodriguez*, Case No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *10 (E.D. Pa. Apr. 1, 2020) (same as to FCI Elkton). Moreover, while the parties argue about how sick Defendant is, how bad the outbreak at Lompoc is, and how effective the BOP's safety measures have been to contain the spread of the virus at Lompoc, the Court finds Defendant's argument on this prong colorable but not determinative, so will not address it in much depth here. (ECF Nos. 758 at 4-10, 765 at 6-13.)

---

[4] The Court has found the 30-day waiting period cannot be waived. *See U.S. v. Kauwe*, Case No. 3:14-cr-00044-MMD-WGC-1, 2020 WL 2475792, at *4 (D. Nev. May 13, 2020).

5

## C. Section 3553(a) Factors and Applicable Policy Statements

The Court will address the applicable policy statements and the Section 3553(a) factors together because the parties' arguments overlap, and the Court finds it is most logical to consider them together. To start, the Court also assumes without deciding that, as Defendant argues, he falls within the categories eligible for compassionate release under the policy statements. Either he is "unable to provide self-care within the Lompoc environment in light of the ongoing and growing COVID-19 pandemic because he is unable to practice effective social distancing and hygiene to minimize his risk of exposure, and if he is infected, he is more likely to develop severe complications with only restricted access to medical care[,]" or for "other reasons"—the combination of his health conditions and the COVID-19 outbreak at Lompoc. (ECF No. 758 at 12 (internal quotation marks and punctuation omitted).) Defendant makes a colorable argument as to why he falls within these categories, and the government does not really dispute that he does. The Court instead focuses on the parties' arguments where they disagree.

On the one hand, Defendant argues the following reasons weigh in favor of his release: (1) he is no longer a danger to the community because he lost his license to practice medicine and prescribe drugs; (2) his BOP pattern score is in the minimum category, showing BOP considers him a low recidivism risk; (3) he has a release plan to stay with his wife in Bakersfield, CA—and is willing to stay on home confinement for some time if released; (4) he has reflected, changed, and regrets his offense; (5) he is working on his addiction issues by completing a 40-hour emotional control and substance abuse class. (*Id.* at 13-16.)

On the other hand, the government argues that Defendant's compassionate release request should be viewed in light of Section 3582(c)'s default that a court cannot generally modify a sentence once imposed, along with the harm Defendant has caused, the danger he still poses, and the need to impose just punishment for his crimes. The government more specifically argues that: (1) as outlined in a letter, one of Defendant's victims' family opposes his release and would view it as a miscarriage of justice; (2) the

1  Section 3553(a) factors require that the Court provide just punishment and that the
2  sentence imposed reflect the seriousness of Defendant's crimes; (3) Defendant remains
3  a danger to the community because he killed two patients and flooded the entire
4  community with addictive drugs without hesitation or remorse; (4) he did not show
5  remorse at sentencing, and his statement of remorse offered to accompany his
6  compassionate release request is conclusory; and (5) releasing Defendant would
7  undermine the Section 3553(a) factors the Court considered at sentencing. (ECF No. 765
8  at 15-17.)

9  Defendant replies to some of these points. He specifically argues that he will not
10 be a danger to the community because the Court could place him in home confinement,
11 and he will not be able to prescribe drugs. (ECF No. 769 at 11.) He also points out he
12 never committed a crime before these offenses. (*Id.*) He argues that other courts have
13 released people due to the combination of COVID-19 outbreaks and their underlying
14 health conditions even where they committed heinous crimes. (*Id.* at 12.) He also calls
15 the government's denigration of his contrition in connection with the Motion unfair, and
16 proffers an email explaining the remorse he now feels in more detail.[5] (*Id.* at 12-13.)
17 Finally, Defendant argues his Motion is not about just punishment at all, but instead about
18 the COVID-19 risk he faces at Lompoc in light of his underlying medical conditions. (*Id.*
19 at 15-16.)

20 But compassionate release is about both. The Court must consider the Motion both
21 in light of Defendant's susceptibility to COVID-19, which goes to the "extraordinary and
22 compelling reasons" prong of the analysis, and consider just punishment, as that is one
23 of the Section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring the Court

---

[5] The Court similarly questions the sincerity of Rand's expression of remorse. His email seems to suggest that time in custody the last four years has caused him to reflect on his conduct. But Rand was in pretrial custody almost half of that time. He was arrested on April 29, 2016, and remained in pretrial custody from that date. (ECF No. 16.) Thus, by the time of his sentencing on November 20, 2017 (ECF No. 662), he had been in custody for over a year. But he did not express remorse then. And it is not clear what caused Rand to feel remorse now—after an additional two and a half years in custody.

consider the Section 3553(a) factors); *see also* 18 U.S.C. § 3553(a)(2)(A) ("to provide just punishment for the offense"). Defendant's premise in his reply brief is therefore incorrect.

The Court finds the arguments the government raises as to the Section 3553(a) factors far more persuasive than Defendant's. Beginning with the nature and circumstances of the offense, it is difficult to say exactly how much harm Defendant caused to the Northern Nevada community, but there is no doubt it was substantial based on the testimony presented by Defendant's victims and their families at the sentencing hearing. *See* 18 U.S.C. § 3553(a)(1) (specifying this is a factor the Court must consider). Defendant pleaded guilty to lesser included offenses of killing at least one person and singlehandedly supplying a drug ring operated out of a well-known local car dealership for years. (ECF Nos. 569 (superseding indictment), 598 (plea agreement).) His offenses were incredibly serious. And the Court therefore agrees with the government that the nature and circumstances of the offense weigh against releasing him.

Moving on to the history and characteristics of Defendant, he is an outlier. *See* 18 U.S.C. § 3553(a)(1) (specifying this is a factor the Court must consider). While this may have been his first offense, the offense conduct that he pleaded guilty to spanned years. (ECF No. 598.) Thus, Defendant's argument that he is not very culpable because this was his first offense is unpersuasive. He was also a doctor, so his over prescription of pills over a period of years made his conduct particularly egregious in light of the trust the public places—and must place—in doctors. More disturbing the apathy Defendant exhibited for how the opioids he overly prescribed harmed his patients. An example is Defendant's treatment of Mr. Yenick after Mr. Yenick's former provider and Mr. Yenick's mother conveyed their concerns to Defendant about Mr. Yenick's situations.

Moreover, Defendant is notable for his lack of remorse—and that makes him an outlier from most people the Court has sentenced. He in fact unsuccessfully litigated his lack of remorse all the way to the Supreme Court, and the Ninth Circuit specifically noted how he "falsely denied or frivolously contested offense conduct" at sentencing even after pleading guilty. (ECF No. 749 at 3.) This is unusual. Moreover, these circumstances make

the government's attack on the sincerity of his remorse proffered with his Motion understandable, not unfair. Defendant's remarkable lack of remorse in light the severity of his crimes thus also weighs against granting his Motion.

The Court also agrees with the government that, as the Court found at sentencing, the seriousness of Defendant's crimes weighs against his release. *See* 18 U.S.C. § 3553(a)(2)(A). The government is basically making a moral argument—that just punishment requires Defendant remain at Lompoc particularly given that he has more than half of his sentencing remaining. And the Court finds that argument persuasive because of—as described above—the seriousness of Defendant's crime, the massive harm he inflicted on an entire community, and his notable lack of remorse.

In addition, there is an important deterrence interest at play here. *See* 18 U.S.C. § 3553(a)(2)(B). It is undeniably in the public interest for doctors not to recklessly overprescribe opioids. Defendant's sentence sends a cautionary message of deterrence to other doctors who may feel tempted by the illicit profit of unnecessary prescriptions. And while the government raises this factor in its response (ECF No. 765 at 2), Defendant does not address it in reply (ECF No. 769). This factor also weighs against releasing Defendant.

18 U.S.C. § 3553(a)(2)(D) is either neutral, or weighs in Defendant's favor, depending on whether you accept his argument that he will get better medical care at his wife's house in Bakersfield than he will at Lompoc.

But the Court agrees with the government that 18 U.S.C. § 3553(a)(2)(C) weighs in favor of denying Defendant's Motion. Defendant takes a narrow view of this factor in arguing that he cannot harm the public because he can no longer prescribe pills. (ECF No. 769 at 11.) The government is actually making the broader, and moral, argument that he is a danger to the public because Defendant willfully overprescribed pills for years, even when he knew he was killing his patients. (ECF No. 765 at 15-17.) The Court understands the government to be arguing that Defendant is a danger to the community if released because he proved himself capable of committing great harm, for years,

without showing any remorse. So the risk is not necessarily that he will overprescribe pills again, but instead that Defendant will commit some other harmful action because he has shown he is capable of it. And in this unique case, the Court finds that argument persuasive.

In sum, the Court finds that the Section 3553(a) factors weigh determinatively against releasing Defendant. The Court will therefore deny his Motion.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendant's motion for compassionate release (ECF No. 758) is denied.

It is further ordered that Defendant's motion submitting his redacted medical records to the Court (ECF No. 759) is granted.

It is further ordered that the government's motion to seal (ECF No. 766) is granted. Defendant's medical records (ECF Nos. 766-1, 766-2) will remain under seal.

DATED THIS 26th day of May 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE