JASON M. FRIERSON
United States Attorney
Nevada Bar Number 7709
WILLIAM R. REED
Nevada Bar Number 11251 (inactive)
Assistant United States Attorney
400 South Virginia Street
Suite 900
Reno, Nevada 89501
william.r.reed@usdoj.gov
775-784-5438
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
## -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:16-cr-0029-MMD-(CSD) |
| Plaintiff, | Government's Response to Defendant's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody |
| vs. | |
| ROBERT G. RAND, | |
| Defendant. | |

CERTIFICATION: This response is timely filed.

**A. Facts and Procedural History**

Before April 2016, Rand was a licensed physician with a medical practice in Reno, Nevada. *See* Presentence Investigation Report ("PSR") ¶¶ 13, 99. As a result of an investigation from 2012 through 2016 (an investigation that included an authorized federal wiretap on several of the target's telephones), law enforcement learned that Rand and Richard West (nominally, one of Rand's patients) led a criminal conspiracy to distribute and possess with intent to distribute controlled substances, primarily oxycodone. PSR ¶¶ 14, 16. As part of that conspiracy, Rand prescribed West large amounts of oxycodone (a highly addictive opioid-based

painkiller), which he would ingest or sell to others, one of whom turned out to be a confidential police informant. PSR ¶ 15.

In addition, Rand grossly overprescribed the addictive painkiller oxycodone to his patients. *See* PSR ¶¶ 41-47. One of those patients, Michael Yenick, died from an overdose of oxycodone on October 2, 2015, less than two weeks after Yenick's mother called Rand (on September 22, 2015) and begged him to stop prescribing drugs to her son. PSR ¶ 44, 47. Rand ignored the mother's plea, prescribing Yenick 45 doses of 30 mg oxycodone the very next day, September 23, 2015; and another 180 doses of 30 mg oxycodone a week later, on September 30, 2015, two days before Yenick died from the overdose. *See* PSR ¶¶ 45-47.

On May 11, 2016, the Grand Jury indicted Rand and eight co-defendants, including West. ECF No. 55. The indictment charged Rand with conspiracy to distribute and possess with intent to distribute controlled substances (21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846; and 21 C.F.R. § 1306.04); distribution of controlled substances to West (21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 21 C.F.R. § 1306.04); and distribution of a controlled substance resulting in death (21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 21 C.F.R. § 1306.04). ECF No. 55; *see also* ECF No. 570 (superseding indictment).

At his change-of-plea hearing on July 17, 2017, Rand entered into a written plea agreement (ECF No. 592) and pleaded guilty to a superseding information (ECF No. 590), charging the involuntary manslaughter of Yenick (Count 1, in violation of 18 U.S.C. § 1112(a)); and distribution of a controlled substance (Count 2, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 21 C.F.R. § 1306.04). In exchange, the government agreed—among numerous other benefits to Rand—to dismiss other charges pending against Rand. ECF No. 592 at 3.

After a sentencing hearing where both parties called witnesses, the Court considered the evidence, the factors in 18 U.S.C. § 3553(a), the PSR, the memoranda, and the guidelines

before imposing concurrent, within-guidelines sentences of 96 (Count 1) and 120 months' imprisonment (Count 2). ECF No. 725 at 219-229 (sentencing hearing transcript); ECF No. 668 (judgment). Rand appealed his sentence and the Ninth Circuit affirmed. *See United States v. Rand*, 758 F. App'x 596 (9th Cir. 2019) (unpublished).

On June 28, 2023, Rand filed a motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. ECF No. 821. Relying on *Ruan v. United States*, 142 S.Ct. 2370 (2022), Rand alleges ineffective assistance of counsel because he claims "[his] attorney never told [him] that the government would have to prove that [he] knew [he] wasn't authorized to write the prescriptions" that were the basis of his conviction. ECF No. 821 at 5 (ground one). Rand also alleges the Court failed to advise him that he had to know the prescriptions at issue were not authorized when he wrote them. *Id*. at 6 (ground two). Finally, Rand alleges his conviction is invalid because his plea agreement refers to a federal regulation (21 C.F.R. § 1306.04) in conjunction with the controlled substance distribution statute. *Id*. at 6-7 (Ground Three). Rand's motion does not challenge his involuntary manslaughter conviction.

The Court ordered the government to file a response to Rand's motion by August 29, 2023. ECF No. 823.

**B. Points and Authorities**

A federal prisoner may seek relief under 28 U.S.C. § 2255. The statute provides four grounds that justify relief: 1) "the sentence was imposed in violation of the Constitution or laws of the United States;" 2) "the court was without jurisdiction to impose such sentence;" 3) "the sentence was in excess of the maximum authorized by law;" 4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

A criminal defendant is entitled to reasonably effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The right to effective assistance of counsel is the

3

right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. *See Strickland v. Washington*, 466 U.S. 668, 685 (1984). Counsel is presumed competent. *See United States v. Cronic*, 466 U.S. 648, 658 (1984). The burden rests on the defendant to establish a constitutional violation. *Id*.

To obtain reversal of a conviction, a petitioner must prove (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense to such a degree as to deprive the defendant of a fair trial. *Strickland*, 466 U.S. at 687-688, 692. To establish deficient performance under *Strickland*, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. *Id*. at 687. Exercising highly deferential judicial scrutiny, *id*. at 699, the inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. Defense counsel's actions are not considered deficient when made for tactical and strategic reasons that were not "outside the wide range of professionally competent assistance." *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1996).

To demonstrate prejudice, the defendant must show that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *United States v. Schaflander*, 743 F.2d 714, 718 (9th Cir. 1985); *see also Hendricks v. Calderon*, 70 F.3d 1032 (9th Cir. 1996).

1. **Rand Cannot Establish Deficient Performance by His Counsel.**

After Rand's conviction, the Supreme Court held in *Ruan*, that for a medical practitioner who is authorized to dispense controlled substances to be convicted under the Controlled Substances Act (CSA), the government must prove the practitioner "knowingly or

intentionally" prescribed a controlled substance for a non-legitimate medical purpose outside the usual course of professional practice. *Id.*, 142 S. Ct. at 2375. Rand claims his counsel failed to advise him that the government must prove that he knew or intended to issue prescriptions for controlled substances where he lacked authorization to do so. ECF No. 821 at 5. The plea agreement and the guilty plea colloquy squarely contradict Rand's baseless claim.

Rand's plea agreement provided:

> Count 2 of the Superseding Information: The elements of unlawful distribution of a controlled substance, oxycodone, to R.W., in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 21 C.F.R. § 1306.04 are as follows:
>
> 2. From in or about January 2011 to April 2016, Dr. Rand, a licensed medical practitioner at the time, distributed oxycodone, a schedule II controlled substance to R.W.;
>
> 3. The distribution of oxycodone was outside the usual course of professional practice and without a legitimate medical purpose, and
>
> 4. Dr. Rand acted with the intent to distribute the oxycodone not for a legitimate medical purpose and outside the usual course of professional practice. *See United States v. Feingold*, 454 F.3d 1001, 1008 (9th Cir. 2006).

ECF No. 592 at 5 (case citation also provided in original).

When Rand pleaded guilty, he told the Court that he had reviewed and discussed the plea agreement with his counsel before signing it. ECF No. 599 at 30 (transcript of guilty plea proceeding). Rand also advised the Court that his counsel had explained the terms of the plea agreement and that he understood those terms. *Id.* at 31. Later in the guilty plea proceeding, Rand re-affirmed that he had no questions about the meaning of any terms in his plea agreement and that he fully understood the terms of the plea agreement. *Id.* at 43.

As part of the plea colloquy, the Court canvassed Rand regarding the elements of distribution of a controlled substance by a medical practitioner:

> THE COURT: All right. With respect to Count two, there are three essential elements that the government must establish:

>First, that you, from the time period alleged in the Superseding Information, you were a licensed medical practitioner and that you distributed oxycodone, which is a Schedule II controlled substance;
>
>Second, the distribution was outside the usual course of professional practice and without a legitimate medical purpose; and
>
>Third, you acted *with the intent to distribute oxycodone not for a legitimate purpose, and outside the usual course of professional practice. In other words, you were not acting as a medical professional. You were pushing drugs.*
>
>Those are the essential elements.
>
>Do you understand that by pleading guilty you are admitting those three essential elements are true as they apply to you?
>
>DEFENDANT RAND: I do, Your Honor.
>
>THE COURT: Do you understand that if you don't plead guilty and the case goes to trial on the Superseding Information, it's the government's burden to prove those three elements are true?
>
>Defendant Rand: I understand.

ECF No. 599 at 24-25 (emphasis added).

Rand's plea agreement and the guilty plea colloquy complied with *Ruan* because they explicitly established that Rand intentionally dispensed controlled substances in an unauthorized manner outside the usual course of professional practice as a drug dealer. *See Ruan*, 142 S. Ct. at 2375. Accordingly, Rand's claim that his counsel failed to advise him that his medical practitioner status required proof that he knowingly or intentionally prescribed controlled substances in an unauthorized manner is baseless.

**2.    The Procedural Default Rule Bars § 2255 Claims That Rand Could Have Raised on Direct Appeal but Did Not.**

The procedural default rule holds that where a defendant fails to raise a legal argument on direct appeal, that argument is defaulted and cannot (absent extremely unusual circumstances) be raised collaterally under 28 U.S.C. § 2255. *Massaro v. United States*, 538 U.S.

6

500, 504 (2003) ("[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.") Justice Scalia summarized: "[A] prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim. If the claim was . . . not raised [on direct appeal], it is procedurally defaulted and the habeas court will not adjudicate it absent countervailing equitable considerations." *Withrow v. Williams*, 507 U.S. 680, 720-721 (1993) (Scalia, J., concurring) (citing *United States v. Frady*, 456 U.S. 152 (1982)).

The procedural default rule safeguards the courts' interest in finality. By requiring defendants to raise their arguments on appeal (rather than after appeal), the rule "conserve[s] judicial resources and . . . respect[s] the law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504. These principles were discussed in *Sunal v. Large*, 332 U.S. 174, 178 (1947), where petitioners did not, on appeal, assert that opposition to certain regulations might have provided a defense. The Court held that, while such a challenge might have carried the day, the failure to raise it on direct appeal precluded collateral attack. *Id*. at 181 ("[I]f [petitioners] had pursued the appellate course and failed, their cases would be quite different. But . . . they chose not to pursue the remedy which they had . . . ."). The Court explained:

> If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by habeas corpus, litigation these criminal cases will be interminable. Wise judicial administration of the federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court.

*Id*.; *see also id*. at 178 ("the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal."; *see also Coleman v. Thompson*, 501 U.S. 722, 747-748 (1991) (among the most "significant costs" of habeas proceedings is "the cost to finality in criminal litigation . . . .") (internal quotation omitted).

Thus, where a defendant fails to raise a claim on direct appeal, that claim is procedurally

7

defaulted absent a showing of either cause and prejudice, or "actual innocence." *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *see also Frady*, 456 U.S. at 167 (movant must demonstrate cause excusing his procedural default); *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993) ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error.").

For "cause," the defendant must show "that 'some objective factor external to the defense impeded [his] efforts' to raise the [barred] claim . . . . Objective factors that constitute cause include 'interference by officials' that makes compliance with the State's procedural rule impracticable, and 'a showing that the factual or legal basis for a claim was not reasonably available to counsel.'" *McCleskey v. Zant*, 499 U.S. 467, 493-494 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). For "prejudice," the defendant must show "a reasonable probability that his conviction or sentence would have been different." *United States v. Lopez*, 577 F.3d 1053, 1060 (9th Cir. 2009) (quoting *Stickler v. Green*, 527 U.S. 263, 296 (1999) (defaulted *Brady* claim on collateral attack)).

Absent a showing of cause and prejudice, a defendant must prove "actual innocence," that is, "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Under this standard, and "[b]ecause . . . evidence [of innocence, *viz*, "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"] is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* at 324; *see also United States v. Cervini*, 379 F.3d 987, 992-993 (10th Cir. 2004) (the issue is "whether, when contrasted with the corresponding evidence of guilt, such evidence is powerful enough to

convince a court that no reasonable juror would have voted to convict") (applying *Schlup*); *see also Coleman*, 501 U.S. at 750 (a defendant must show that application of the procedural bar will "result in a fundamental miscarriage of justice").

These principles compel default of Rand's two remaining claims: 1) his allegation that the Court failed to advise him that he had to know the prescriptions at issue were not authorized when he wrote them, and 2) his allegation that his plea agreement is deficient because it incorporated language from a federal regulation. *See* ECF No. 821 at 6-7. This Court should therefore find that both claims are procedurally defaulted.

In any event, both claims are substantively without merit. First, as detailed in the section above, the Court correctly advised Rand that proof of the drug distribution charge required proof that acted with the intent to issue unauthorized prescriptions. ECF No. 599 at 25 ("[Y]ou acted with the intent to distribute oxycodone not for a legitimate purpose, and outside the usual course of professional practice . . . [i]n other words, you were not acting as a medical professional . . . . [y]ou were pushing drugs).

Second, Rand's contention that he was convicted for violating a regulation, rather than a criminal statute, is incorrect. The CSA makes it a federal crime, "[e]xcept as authorized[,] ... for any person knowingly or intentionally ... to manufacture, distribute, or dispense ... a controlled substance," such as opioids. 21 U.S.C. § 841(a). A controlled substance prescription is only *authorized* when a doctor issues it "for a legitimate medical purpose ... acting in the usual course of his professional practice." *Ruan*, 142 S. Ct. at 2374 (quoting 21 C.F.R. § 1306.04(a) (2021). "After a defendant produces evidence that he or she was authorized to dispense controlled substances, the Government must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so." *Id*. at 2375.

As a physician Rand was permitted to distribute certain controlled substances to patients

9

"as authorized." *See* 21 U.S.C. § 841(a)(1). The parameters of authorization for licensed medical professionals are established by federal regulation, *i.e.*, 21 C.F.R. § 1306(a)(4). Rand pleaded guilty to violation of a criminal statute (21 U.S.C. § 841(a)(1)) because he acted outside the scope of the regulatory authorization (21 C.F.R. § 1306(a)(4)) that permits physicians to prescribe controlled substances. ECF No. 592 (plea agreement). That is distinct from being convicted of a crime for "violating a regulation." Thus, in addition to being procedurally defaulted, this claim has no substantive merit.

### 3. This Court Should Deny a Certificate of Appealability.

Where a district court denies relief on a motion under § 2255, "the petitioner may not appeal that denial without first obtaining a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(B). *United States v. Washington*, 653 F.3d 1057, 1059 (9th Cir. 2011). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing 2255 Proceeding for the United States District Courts.

To obtain a certificate of appealability, the petitioner must make a "substantial showing of the denial of a constitutional right" of each challenged issue. 28 U.S.C. § 2253(c)(2), (3). Because Rand makes no such showing, this Court should deny a certificate of appealability.

### 4. This Court Should Direct the Clerk to Enter a Separate Judgment.

The Ninth Circuit held, in *Kingsbury v. United States*, 900 F.3d 1147 (9th Cir. 2018), that Rule 58's separate document requirement applies in 18 U.S.C. § 2255 proceedings. In light of that decision, the Court should direct the clerk to enter a separate judgment on the docket.

**D. Conclusion**

Based upon the above, this court should deny Rand's Section 2255 motion and deny a certificate of appealability.

DATED this 28th day of August 2023.

Respectfully submitted,

JASON M. FRIERSON
United States Attorney

_____//s//_____
WILLIAM R. REED
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I, William R. Reed, certify that the following individual was served with a copy of the government's response in opposition to defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody on this date by the below identified method of service:

U.S. Mail:
Robert Gene Rand
BOP Reg. # 23467-111
FCI Terminal Island
Federal Correctional Institution
P.O. Box 3007
San Pedro, CA  90733

DATED: August 28, 2023.

                                          //s//
                              WILLIAM R. REED
                              Assistant United States Attorney